Oral argument not to exceed 15 minutes per side. Mr. Monsees for the plaintiff's appellant. Please the court. My name is Tim Monsees. I'm from Portland, Oregon. I'm here to defend Kansas City, Missouri. And I'm here today to represent Mr. and Mrs. Bradley. I think it's important to note at the outset that the product involved in this case, because I think it's at times a bit convoluted in the record, is not a tree stand. The product that's at issue in this case are straps that are commonly used in a variety of applications. These particular ones were certainly sold to be affixed to hold a tree stand that's affixed. It's a white weight-bearing strap that is attached to a tree and accordingly then also attached to the tree stand itself. And that's what deer hunters use to stand in the trees and basically to hunt game. But there is nothing about the tree stand itself in this case that failed. And the tree stand that was involved was made by another product manufacturer who is not a party to this lawsuit. These straps were replacement straps anyway were they not they would come with this tree stand device. And certainly nobody in this courtroom or in our case judge ever maintained that these straps have an unlimited life expectancy. In fact, I think it's one of the things that demonstrate that my client was prudent in that he bought replacement straps, realizing that the original straps on his tree stand were in need of replacement. There is essentially, I think, to boil all the arguments down and all the issues that are involved in this case, essentially two directions here. There's the direction where the district court disqualified one of our experts, Mr. Charles Powell, who's a professional engineer and has extensive engineering experience, has done projects for the United States government, has taught, has extensive experience in polymers and other things, and therefore became focused on the testimony that he had had little if any experience directly with tree stands. But again, the tree stand wasn't the product at issue. The other issue is that I believe that the court in granting summary judgment, essentially the court, to boil it all down and to simplify it, granted summary judgment on the issue of product defect because the court interpreted that with the striking of our engineer that we couldn't make a submissible case essentially on any product liability theory of recovery. The court really never addressed the consumer expectations test. Although the court quotes the statute, quotes the relevant portion from the statute where the consumer expectation test in Tennessee is noted, there is no indication that the court ever analyzed this case with respect to that second area of product defect under Tennessee law. And in fact, that was never... You're saying under that, the consumer expectations test, you don't need to have an expert? That's my understanding, Judge. So that even if one aspect of our case would fail essentially and theoretically for failure to have an expert through Mr. Powell to prove product defect or design defect, it was never addressed by the trial court whether or not the case could continue forward under the consumer expectations test. And frankly, the defendant never brought up that as a potential theory, never disputed that as a potential theory in any of its briefings. So in... You can't argue before us that this is a complex product like the complex drugs or the... And for that reason, it can't be subject to the consumer expectation test. Give us your argument for why the consumer expectation test would apply because people could know through everyday experience about this product. The product, although in this instance, again, was used in application, in a hunting application. Polypropylene straps are everywhere. And they're load-bearing. They're used to tie down loads, for example. They're used in all types of different household applications. In this particular instance, yes, it was affixed to a tree stand. But polypropylene straps are used in a variety of household applications. I think one of the debates and one of the questions that I've seen in some of the cases out of this circuit is who is the consumer? Are we looking at consumers in general or are we looking at only consumers of this particular product? In this case, in this application, using a polypropylene strap in the application of using it for tree stands. But the consuming public has... I'm not going to wager a guess here, but I would wager that a significant number of American households in one application number have polypropylene straps, most of which are used in some way to bind or hold that has some load-bearing type of application. But why does that mean that you don't need an expert just because everybody has some of these straps? Maybe we don't understand how the straps decay or don't decay. Well, under the prudent... I think under the prudent manufacturer test for consumer expectations, I think it's reasonably clear that under that angle, if you will, of proving unreasonably dangerous, that the courts have said that an expert witness may well be required. In the context of what... of unreasonably dangerous in terms of the consumer's expectations, I haven't found any case law, including case law from this court, Your Honor, that would indicate that an expert is necessary to establish what the consumer's expectations are, that that's a buyer's side, that the conduct and the design conduct and anything that the manufacturer or designer did is not the focus of the consumer expectations test when you're looking at unreasonably dangerous. What's your best case to show the Tennessee law will allow you to present this to a jury without an expert? Do you have one? Well, I actually think that... I mean, I haven't found a Tennessee case that addresses it nearly quite that specifically. There is certainly lip service paid to that in the Jackson case. There is lip service paid to that in... even in this court's decision in the Sigler case. There is some indication in the Hughes case, which is a Tennessee court of appeals case, which is cited in the Brown versus Raymond case, as I recall, and some discussion there about the need for experts. But I would say probably Jackson certainly seems to imply because they struck experts in the Jackson case and yet allowed the consumer expectation test, or recognized that the consumer expectation test could go forward. Now, in the Sigler case, for example, there was striking of experts in that case as well. With respect to the expert, Powell, the district judge at page 12 of the decision in document 97 is relying on the Freeland Court's assessment of Mr. Powell, Dr. Powell, and views Powell as an expert in metallurgy and says that the evidence regarding his experience with the webbing material, according to the evidence presented, is sparse. Can you clarify at that point in time, this was June of 2014, what was the evidence that you would point to to show that Powell met the qualifications requirements under Daubert for being an expert on webbing material or polymers? I believe that even in his original report, his Rule 26F report, Judge, but certainly in the report that we presented in reconsideration, which I believe was in affidavit form, elaborated a bit more on his experience in polymers. He has done polymer testing, as I recall, and I'm going by recall here, I apologize, I do not have that directly in front of me, Judge, but that he has testified in cases involving straps, mainly for load-bearing straps, such as you would strap a load down with in trucking, for example. I believe he did certainly admit, as I said before, that he did not have testimony in a case with straps in a tree stand application, but that he had done in another load-bearing application. You mentioned the reconsideration motion, but the concern that I have is what evidence did you present before this ruling in the Order Document 97 in June of 2014? His original report, Judge, did disclose, there was some elaboration later, but did disclose his testimony, and I believe in his deposition with Mr. Karfus, I can't give you a top-of-my-head cite, but it's in the record, I think it's document, excuse me, I'm very sorry, talked about his testimony in prior straps cases, load-bearing straps in the context of, as I said, like truck securing a load, for example, both of which have the same kind of tensile tendencies and dynamic load tendencies as you would find in a tree stand application. That doesn't show that he meets the qualifications, it just shows that he testified one time, or maybe multiple times. I'm just trying to explore. Maybe I'm not fully understanding your question. Well, I thought that the district judge says he's not qualified, because his experience, his expertise is in metallurgy. Yeah, and Judge, certainly his original degree is in metallurgy. We made no effort to make that the focus of his qualifications. He's involved, and he's on one of the ASTM committees regarding materials, for example, or ASTM, yes, ASTM committees regarding materials, which is in his CV, which would have been a part of his report, and also later a part of his affidavit. His CV was attached and affixed to his original report, which would have shown that background. He's a voting member of the ASTM Committee on Materials, which is globally includes polypropylene materials. You made those arguments to the district court before the district court ruled? Yes, ma'am. Document 97. But again, Judge, part of the problem here, I believe, is that the defendant's argument really never addressed Mr. Powell's lack of qualifications in materials. I mean, the thrust of the defendant's argument was that he lacked experience in tree stands. That's what we focused our attention on, and I think part of the problem here, maybe ultimately with the trial court is, is the problem of motions for summary judgment is, is you respond to the argument that's presented to the court by the defendant, and we never know, or we never have direction ultimately in which direction the trial court is going to go, and to the original response to Mr. Powell's qualifications, it was because we focused on how that, that affected the motion with respect to his experience to testify in a tree stand case. That, that was the focus of the defendant's, and the defendant's only focus was it was... Are you asking us to remand it so the court can have a hearing on this, or... At the very least, yes, sir. At the very least. ...a resolution as to whether Powell is qualified? Well, I would sure love to have you tell us that Mr. Powell's qualified, Judge, but, you know, any old port in a storm, if you're willing to remand for the court to consider that, I don't think the record was complete, and I think one of the points in the Yawn or John case out of this court, I don't know the proper pronunciation, was that part of the failing, if there's anything that Mr. Powell failed to consider and include in his final analysis, it's because the record keeping of this company is shoddy at best. They don't have any test results from which Mr. Powell could have refined his opinions, and we didn't even get the, the, the supplemental response from the defendant after over a year of litigation identifying the, the material composition of the actual straps until we had already filed our response to the motion for summary judgment.  Thank you. Thank you. Good morning, Your Honors. May it please the Court. Mel Carf is on behalf of the defendants, Ameristep and Primal Vantage. First thing I want to talk about, Your Honors, the Freeland case is an identical strap with the same experts, the same attorneys, myself and Mr. Monsies. It's the same product in two different federal courts, and ironically, two different federal courts came to the same exact conclusions at different times that Mr. Powell was not qualified. They say that, that your motion about his disqualification is based on the fact that, that Powell never used a tree stand, never put one up, and never did all this stuff, and so that's why they responded that way. Is that what your motion is? This case boils down to, the plaintiff's theory in this case was, and this is the strap we're talking about, it's a ratchet strap, a polypropylene ratchet strap, and their theory was, design theory was, this was defective for one reason, because the manufacturer did not include a UV inhibitor into the strap material. A UV inhibitor prevents sunlight from breaking down the strap as quickly, okay? A person could testify about it without ever having gone on a deer hunt and gone up a tree, right? That's correct, Your Honor, but my motion, our defendant's motion to strike Mr. Powell was centered on that one issue, on whether he was qualified to render an opinion regarding polymers and a polypropylene strap. So, our motion, I think if you look at the judge's response, or the court's order regarding the motion for reconsideration says, it's not true. The defendant's motion does directly apply to whether this witness was qualified to render opinions concerning a polymer material, this polypropylene strap. The focus of striking him, Your Honor, was in the tree stand context, yes, but it was very specific that he cannot provide opinions that this product's defective because it lacked a UV inhibitor, because he's not qualified to give that opinion. Well, didn't he have lots of teaching experience in various materials and other CV demonstrations of various materials, not focused on metallurgy? The vast majority of his experience was metallurgy. He had very little experience with polymers, and his deposition transcript, I took his deposition, which I cited to the court, is when it came to polymers, such as polypropylene, he had very little experience. A handful of cases... I'm struggling with what was cited to us out of that deposition. You cite the kind of general question, do you have any expertise concerning any VU inhibitors and polymer materials, and he does say, no, I'm not a polymer chemist or a manufacturer of polymers, but doesn't he then immediately claim in response to the questions that you didn't include in your brief that he is an expert in this field? The next question is, when it comes to the you do not hold yourself out as an expert in that area on how to do it, but as far as the material is concerned, that it's a necessity, yes, I would hold myself out as an expert. And then the, do you hold yourself out as an expert concerning what effect to the material the VU inhibitor is going to have? Yes. Do you hold yourself out as a materials expert? Yes. When it comes to, have you ever consulted in any capacity a material that's been, that has a VU inhibitor has been utilized in? I've consulted in material polymer behavior in a lot of different cases where VU inhibitors have been part of the polymer blend. They almost always are. So I'm struggling with the basic test here. What do you say is the basis for expert testimony under Rule 702? Well, for qualifications, obviously background experience, education, those type of things. And in this case, from taking his deposition and questioning him on, you know, his qualifications and background. What do you need, though? What do the experience, training, or education, you can testify if what? Doesn't the rule say if it will help the trier of fact to understand the evidence or to determine a fact in issue? What is your argument in light of these deposition answers and this man's CV that he would not have the experience, the training, and the education to help the trier of fact understand the evidence? Well, once again, Your Honor, it goes to, his experience with polymers is very limited compared to metallurgy. And what relies on the next question is what he did in this case as far as his qualifications goes. He has very little experience about UV inhibitors and these type of materials. That's not what his deposition says. But the next step, Your Honor, I guess, the next step is taking it a step further and saying, in this case, what his opinions were, the one basic opinion, the design defect opinion he has is about using a UV inhibitor. And taking the next step about qualifications under 702 and whether it's reliable is the step what he didn't take is he referenced that but he could not provide any testimony or any opinions regarding. Well, did he have, when his deposition was taken, you had still withheld information on whether there were VU inhibitors in these particular polymer straps. Isn't that correct? That is not accurate, Your Honor. Tell me when you gave the information and the response to that discovery. Sure. The answer to that discovery that plaintiff's counsel references is to supplemental discovery request. There's two cases here, Freeland and Bradley, going on simultaneously. During initial production, probably in 2012, we produced engineering drawings that showed that the chemical makeup of the material was polypropylene. Mr. Lee, the corporate representative, testified probably in 2012 in both cases that the material at issue was polypropylene and did not use UV inhibitors. Mr. Powell, their expert, tested the materials and determined that it was polypropylene. So, for years, they've known it's polypropylene. What I did was when Bradley's case was getting ready for trial, I'm going through my stuff and I see, oh, there's one set of discovery that's been unanswered. I answered it and, Your Honor, the answer I gave him was the same answer I had two years ago. It's polypropylene. 97.5% polypropylene. But did the answer that you had not given until the very end include an admission that there were no VU inhibitors included in the polypropylene straps? That is true, Your Honor, but they also knew that from prior discovery responses as well as from Mr. Lee's deposition two years prior. So, there's been no secret, Your Honor. We never said there was a UV inhibitor in this. Mr. Powell knew that from the engineering drawings. He knew that from Mr. Lee's... But he knew that in this case by verification after his deposition. Is that correct? That's not... In this case. I'm not talking about the other case. Sure. In Bradley, Your Honor, in this case, he knew before Mr. Lee's deposition was taken, before his deposition, Mr. Lee's indicated that this is a polypropylene material and it does not use a UV inhibitor. He knew that probably a year before his deposition. A year before Mr. Powell's deposition? Correct. Because Mr. Lee's deposition was taken before Mr. Powell's deposition. And Mr. Powell also conducted testing of the strap material which came out of his deposition in which the polypropylene material was identified as polypropylene and also that there's no UV inhibitor or any additives added to it. He knew that before his deposition and before the motion for summary judgment were filed. It was my mistake, Your Honor, by going through discovery and saying, oh, I've got an unanswered set here. I'm going to answer them now. But the information contained in there was known by plaintiff's counsel, by plaintiff's experts for a year or so before the motions were filed, before they responded. That's the record. Help me begin with an understanding of what it was that was lacking in the deposition and the CV and the expert report of Mr. Powell. Your brief before this court speaks a great deal about he has never testified about tree stands. He's never taken a hunter safety course. All of your argument or the core of your argument here has to do with experience with tree stands. I'm struggling to understand why, if you have an expert who does reconstructive and damage analyses as his business, including the polymer straps, why that isn't sufficient no matter where you use the strap, because it applies to a strap, strapping a load on a car, strapping a leash on a dog, carrying a bundle in a business. Why would there have to be expertise with tree stands in order to be a qualified testifier that will help the trier of fact understand the evidence? These replacement rat straps are different because they're used in a specific application for tree stands to secure it to a tree. But doesn't that polypropylene strap secure something on a vehicle or on a business cart or on the back of a backpack? Yes, Your Honor, and here's the difference. When you place a strap on a living thing such as a tree, there's a lot of different configurations, a lot of different things that have to take into account for the design of that product, including, for instance, when you place it on a cart or a cargo strap for a car, there are certain things you need to consider, but when you're putting it on a living thing such as a tree, a tree grows. A tree grows outwards, and that puts stresses on the rat strap material, the webbing material. There's acid in tree bark that affects the interaction with the tree material, with the strap itself. But what you're saying, here's Riddick for cross-examination of the witness before jury, right? I mean, you're talking about, well, you didn't consider the fact the tree grows and the weather's terrible and all this sort of thing. Well, Your Honor, it goes down to is the one opinion that Mr. Powell did have in this case, that this product was effectively designed, was that it did not have a UV inhibitor. And I can list a dozen approximately things that can cause a tree stand ratchet strap to deteriorate on a tree, including tree growth, animals, insects, weather, moisture, temperature fluctuation, freezing, vandals. There's a whole slew of things that can affect a strap on a tree. Why isn't that going to the weight of his testimony as opposed to whether he's qualified to testify? Well, I think that's the second step in the court's analysis was that we don't find him qualified, but even if we do find him qualified, the fact that he can't provide an opinion. Mr. Powell testified, I don't know what causes a strap to break down and fail. I don't know what, all these factors I just referenced, I don't know which one of those could have caused this thing to fail. But his only opinion in this case is that this thing's effectively designed is because it wasn't a UV inhibitor, which would help it protect it from sunlight for a short period of time. So Mr. Powell's testimony was, my one opinion in this case is that it should have had this... But we're talking about, I think the question I asked you is about his qualifications, not about his opinion. Could you address and answer that question? Sure, no problem. The qualifications, once again, Your Honor, my argument would be that based on taking his deposition, his background, I didn't think he's qualified. I filed the motion to say he wasn't qualified, finding the majority of his work was in metallurgy, very little experience, based on my interpretation, in polymer materials, polypropylene, including utilization of UV inhibitors. That was my take on it, and two separate courts agreed with me when I filed the motion, the Bradley Court and the Freeland Court. But we're reviewing the Bradley Court. Yeah, I understand that, Your Honor. So that doesn't count. Yeah, I understand. And the Bradley Court relied on the Freeland Court, and I'm curious, has that case gone up on appeal? No, it hasn't, Your Honor. Ironically, the Freeland case, the motion for summary judgment was granted first, Plano's counsel filed a motion for reconsideration, which I believe last week or the last two weeks was just returned denying their motion for reconsideration, so I assume that'll be going into appeal next. But I should note, too, if you read the court's opinion of Bradley, they don't rely on Freeland. They say they agree with Freeland's analysis, whether it's regarding his qualifications as well as his reliability. They say that they do it for the reasons given in Freedmont. Yeah, I think they say they agree. I just read it. I think they say they agree with it. Struggling with the conceptual basis of Rule 702, which says if you have any of these, and it's all ors, if you have experience, I mean, how many decades of experience does this guy have? Training, education, if it will help the trier of fact, you can testify. And it appears, your briefing appears to me to say, if you have never testified in a tree stand case before, you're not qualified to testify here. I'm at a loss to understand that. I don't know how we would ever get an expert. No, Your Honor, that's not the thrust of my argument or the arguments of the defendants. The thrust of the argument was that this witness, my interpretation of taking his deposition, was his expertise was metallurgy, not polypropylene, not polymers, and not utilization of UV inhibitors. That was based on my interpretation of taking his deposition, and that's why I submitted to the court. And that's what we argued from day one, is that he doesn't have the background with this material to provide these opinions. But you argue before us that he doesn't have it because he's never worked with tree stands, or taken a hunter safety course, or has not testified in these cases. I just want to be sure that we're clear that your position is not that you must have testified in a case that's the exact subject matter of my case before you can be qualified to testify. Absolutely not, Your Honor. The fact that he doesn't have any experience with tree stands really doesn't have any relevance to the basis to exclude him in this case. Our basis is that, although he's got no experience with tree stands, when it comes to polymer materials, that's where he also limits experience and education. His thrust was metallurgy, and polymer materials, polypropylene, that's where the weakness was. Once again, the whole thrust of the plaintiff's case was polypropylene materials and utilization of a UV inhibitor. When I examined him during his deposition, those are the areas where he couldn't really give me much information, he didn't have much experience in. The key thing, Your Honor, that I want to point out, once again, is his one opinion is that this thing was defective because it lacked a UV inhibitor. What about the consumer expectations test and the argument of your opponent that there's no need to have an expert witness, the case should be allowed to proceed? Well, I think as a site in our breach, Your Honor, the consumer expectations test doesn't really apply when you've got a complex and a technical defect or a failure of a product. In this case, the defect in this product, alleged defect, is the chemical composition, the breakdown of this, and whether certain chemicals, UV inhibitors, should have been added or not added, and what types. And that is, Your Honor, understanding when something breaks, but having a layperson understand chemical composition, makeup of a polymer material, and how it breaks down, why it breaks down, is well above... But that's not the test in the state of Tennessee, is it? Doesn't Ray v. Bittcourt teach us that a product under the consumer expectations test, a product is not unreasonably dangerous if the ordinary consumer would, two things, appreciate the condition of the product and the risk of injury. Aren't those the two qualifying issues that would enable us to present a question under the consumer expectations test? Yeah, but I think that it would apply to any product, Your Honor. This isn't Ray, Epsculopator, where there's actually a failure of a product or a breakage of a product and all of a sudden it goes to a jury. They still have to establish what the defect was and the proximate cause. And for this, Your Honor, to explain, for a jury to understand why a strap broke, what the reasons were, what the defect was, I think it's well beyond an average jury to understand that. So for the consumer expectations test, Your Honor, I think it has no application here because this is not a simple analysis of a simple product. What's your best case to say that the consumer expectations test wouldn't apply here? I think it's the Wally case and the coffee case, referenced on page 41 and 42 of our brief. I think that you have exceeded your time limits too, so everybody is doing it today. Thank you. Was there a reservation for time for rebuttal? How much time? Five minutes. In response to some questions from the court and comments from Mr. Karfus, and we got into this debate about what really was the thrust of their motion to disqualify Mr. Powell. Was it based on his lack of tree stand experience or was it on his lack of polypropylene experience? Well, I can tell you, Judge, that at least with respect to the district court's perspective, in his opinion on the motion of reconsideration, he lays out four examples of what he's looking at in terms of the defendant's arguments of disqualifying Mr. Powell. And they appear in document 104, page 3 of 6. And he gives four examples. And one of those examples is that he doesn't have any experience with respect to a tree stand ratchet strap. Another example that the court gives is that he's not qualified to render opinions regarding the subject tree stand ratchet strap. And he lacks the specialized knowledge to render opinions concerning tree stand ratchet straps. The third example that the trial court gave was Mr. Powell has no experience or expertise regarding tree stand ratchet straps. And then the last example is that he does not even know what weather condition caused the straps to break, again in the application of a tree stand strap. So he's focused on the lack of experience with tree stands. No, the word strap is in each one of those points that you just read. I'm looking at it. Every single one says tree stand ratchet strap. But I think he's qualifying it and focusing, Judge, with respect to its application in tree stands as opposed to the generic use of ratchet straps, which he has ample experience in, including other polymers materials, which we cite in our brief. At document 60-22, Mr. Powell testifies regarding his experience in materials failure analysis and looks at all types of polymer materials. He qualifies and stresses, again, this is a strap failure, not a failure of the tree stand structure other than the strap. And he goes on to testify that he's had five or six cases that involve some type of polymer strapping material. All of those are from document 60-22. But again, there's two aspects to this. As Mr. Karff has noted at one point in time, I've used Mr. Powell a number of times as an expert. Primarily he's a firearms expert for me. I do a lot of firearms litigation. But I've used him in materials such as this, and he has ample materials experience. But the side issue with all this is, again, it was never really briefed. It doesn't appear to ever even really truly have been considered by the trial court that we could have made this case without an expert in the context of the consumer expectations test. And I think that's a gaping hole in the court's analysis. It's a gaping hole in the motions filed before the court because certainly the defendant never raises any limitations that we might have pursuant to the consumer expectations test anywhere in its briefing and the underlying matter. The court- I have a question on your own expert on Alan Davison, your warnings expert. I'm trying to understand exactly what occurred in the court order. And it appears that he was excluded only to the extent that he would offer an opinion on the product defect. Am I correct that he was not excluded as a human factors warning expert, or am I wrong? I think that is a proper interpretation, Judge, because frankly we never really tendered Mr. Davison on product defect except to the extent that a product is defective by definition for failure to have a proper warning. In that context, and only in that context, is where we were tendering Mr. Davison as an expert. But I think your analysis is pretty well spot on, because Mr. Davison's expertise was not, to my understanding by the court's order, struck. Okay, thank you. Unless there are further questions, Your Honors, I think I went a little over the last time. I'll quit a little bit early this time and we'll hope it all equals out. Thank you very much. Thank you both for the argument. The case will be submitted.